UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2011 SEP -6  AM 9: 41

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
          DEPUTY

**BUDDY JENE YEARY**

*Plaintiff,*

V.

1) **RISSIE OWENS**, in her Individual and Official Capacity as Director and Presiding Chair of the Texas Board of Pardons and Paroles;

2) **BETTIE L. WELLS**, in her Individual Capacity as General Counsel to the Texas Board of Pardons and Paroles;

**A11CA768 LY**

CAUSE NO. _____

3) **CONRINTH DAVIS**;
4) **JUANITA M. GONZALEZ**;
5) **DAVID G. GUITIERREZ**;
6) **JAMES W. LaFAVERS**;
7) **THOMAS A. LEEPER**; and,
8) **MICHELLE SKYRME**; in their Individual and Official Capacities as Members of the Texas Board of Pardons and Paroles;

9) **PAMELA D. FREEMAN**;
10) **TONY GARCIA**;
11) **JAMES HENSARLING**;
12) **ELVIS HIGHTOWER**;
13) **JAMES PAUL KIEL JR.**;
14) **TRENTON MARSHALL**;
15) **MARSHA S. MOBERLY**;
16) **EDGAR MORALES**;
17) **LYNN RUZICKA**;
18) **CHARLES SHIPMAN**; and
19) **CHARLES C. SPEIER**;  in their Individual and Official Capacities as Commissioners of the Texas Board of Pardons and Paroles;

1

20) **STUART JENKINS**, in his Individual and Official Capacity as Director of the Parole Division of the Texas Department of Criminal Justice;

21) **JANET LATHAM**, in her Individual and Official Capacity as Sex Offender Program Specialist, with the Parole Division of the Texas Department of Criminal Justice;

22) **EARL EL-AMIN**, in his Individual and Official Capacity as Supervising Parole Officer, within District III, of the Texas Department of Criminal Justice;

*Defendants*

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE OF SAID COURT:

COMES NOW Buddy Jene Yeary, Plaintiff in the above captioned and numbered cause and, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Title 42 U.S.C. Sections 1983 and 1988, files this Original Complaint, and in this connection would respectfully show unto the Court as follows:

## I.

## JURISDICTION

The Plaintiff's Original Complaint raises questions arising under the United States Constitution and federal law, and this Court thus has "federal question" jurisdiction pursuant to Title 28, U.S.C. Section 1331, and Title 42, U.S.C. Section 1983. Further, the present Complaint includes claims that seek equitable declaratory and injunctive relief against the Defendants, over which this Court has jurisdiction under Title 28, U.S.C. Sections 1343(a) and 2201.

## II.

## PARTIES

### (A)

Plaintiff BUDDY JENE YEARY ("Plaintiff") is a resident of the City of Fort Worth, Tarrant County, Texas. The Plaintiff is married, is presently on parole and under the supervision of the Parole Division of the Texas Board of Pardons and Paroles, and is projected to complete the period of his parole on June 23, 2027.

### (B)

Defendant RISSIE OWENS ("Owens") is the Chairperson of the Board of Pardons and Paroles in and for the State of Texas. Defendant Owens is being sued in both her Individual and in her Official Capacity as an Agent of the State of Texas.

### (C)

Defendant BETTIE L. WELLS ("Wells") is the General Counsel of the Board of Pardons and Paroles in and for the State of Texas. Defendant Wells is being sued in both her Individual and in her Official Capacity as an Agent of the State of Texas.

### (D)

Defendants CONRINTH DAVIS ("Davis"), JUANITA M. GONZALEZ ("Gonzalez"), DAVID G. GUITIERREZ ("Guitierrez"), JAMES W. LaFAVERS ("LaFavers"), THOMAS A. LEEPER ("Leeper"), and MICHELLE SKYRME ("Skyrme"), are each "Members" of the Board of Pardons and Paroles in and for the State of Texas. These Defendants are being sued in both their Individual and in their Official Capacities as Agents of the State of Texas.

**(E)**

Defendants PAMELA D. FREEMAN ("Freeman"), TONY GARCIA ("Garcia"), JAMES HENSARLING ("Hensarling"), ELVIS HIGHTOWER ("Hightower"), JAMES PAUL KIEL JR. ("Kiel"), TRENTON MARSHALL ("Marshall"), MARSHA S. MOBERLY ("Moberly"), EDGAR MORALES, ("Morales"), LYNN RUZICKA ("Ruzicka"), CHARLES SHIPMAN ("Shipman"), and CHARLES C. SPEIER ("Speier"), are each "Commissioners" of the Board of Pardons and Paroles in and for the State of Texas. These Defendants are being sued in both their Individual and in their Official Capacities as Agents of the State of Texas.

**(F)**

Defendant STUART JENKINS ("Jenkins") is the Director of the Parole Division of the Texas Department of Criminal Justice in and for the State of Texas. Defendant Jenkins is being sued in both his Individual and in his Official Capacity as an Agent of the State of Texas.

**(G)**

Defendant JANET LATHAM ("Latham") is the Sex Offender Program Specialist with the Parole Division of the Texas Department of Criminal Justice in and for the State of Texas. Defendant Latham is being sued in both her Individual and in her Official Capacity as an Agent of the State of Texas.

**(H)**

Defendant EARL EL-AMIN ("El-Amin") is Plaintiff's supervising parole officer, and is a Supervising Parole Officer within District III of the Parole Division of the Texas Department of Criminal Justice, in and for the State of Texas. Defendant El-Amin is

4

being sued in both her Individual and in her Official Capacity as an Agent of the State of Texas.

### (I)

As all Defendants named in this suit, as identified above, are being sued in both their Individual and Official Capacities as Agents of the State of Texas, the Plaintiff intends to provide these Defendants with legal notice of this suit by service of summons on the Texas Secretary of State, on behalf of these Defendants, respectively, *via* U.S. certified mail, restricted delivery, with return receipt requested, pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure and in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code.

### III.

### (A)

### FACTS

1.

On August 2, 2002, Plaintiff was indicted by a Grand Jury in Johnson County, Texas (No. F36020). This indictment contained seven (7) felony counts, four counts of which consisted of various allegations that Plaintiff had engaged in criminal conduct related to the manufacture, possession with intent to manufacture, possession with intent to deliver, or delivery of controlled substances and/or "precursor chemicals" (counts three through six). An additional count of the indictment alleged Plaintiff evaded arrest (count seven); and the remaining two counts (counts one and two) alleged that Plaintiff, on or about June 15, 2002, committed the offense of sexual assault of a child under the age of seventeen (17), with the same minor child being named as the victim in each count.

2.

On January 24, 2003, a Grand Jury in Johnson County, Texas, returned a second, apparently superseding indictment against Plaintiff (No. F36484). This second indictment contained five (5) felony counts, but in all other material respects was identical to the first indictment against Plaintiff returned on August 2, 2002. Both the first (August 2, 2002) and second (January 24, 2003) indictments included two, identical, felony enhancements paragraphs alleging Plaintiff's prior convictions for possession of a controlled substance.

3.

On April 24, 2003, Plaintiff entered into a plea agreement with the State of Texas whereby in exchange for his plea of "guilty" to count four (4) of the second indictment (No. 36484)(Possession or Transportation of an Immediate Precursor Chemical [Sulfuric Acid and Ethyl Ether]); and in exchange for his plea of "true" to the second felony enhancement paragraph contained in the second indictment (i.e., his prior felony conviction for possession of a controlled substance); the State of Texas would: a) dismiss the first indictment against Plaintiff in its entirety; b) not further prosecute the remaining allegations contained in the second indictment; and, c) recommend that Plaintiff be sentenced to twenty-five (25) years confinement in the Institutional Division of the Texas Department of Criminal Justice.

4.

On May 3, 2003, the 18th Judicial District Court of Johnson County, Texas, approved the plea agreement between the State of Texas and Plaintiff, as described in the preceding paragraph, and entered a final judgment of conviction and sentence in accordance with that agreement. On the first page of the State District Court's final

judgment, the following statement appears: "The Sex Offender Registration Requirements under Chapter 62, CCP, do not apply to the Defendant. The age of the victim at the time of the offense was not applicable."

5.

On June 22, 2007, a certificate of parole was issued to Plaintiff by the "Texas Department of Criminal Justice Pardons and Parole Division." This certificate was "ceremoniously" signed by "[Defendant] Rissie Owens - Board of Pardons and Paroles." Under the heading "STATUTORILY MANDATED CONDITIONS," the certificate of parole informed Plaintiff that "[u]pon written instruction from [his] supervising officer," he would be:

a) required to "register as a sex offender under Chapter 62, Code of Criminal Procedure";

b) prohibited from "go[ing] in, on or within a distance specified by a parole panel of premises where children commonly gather;

c) prohibited from "supervis[ing] or participat[ing] in any Program that includes as participants or recipients, persons who are under 17 years of age or younger; and,

d) required to "attend psychological counseling as specified by [his] supervising officer."

6.

On July 9, 2007, Plaintiff was presented with a copy of the certificate of parole, as substantively described in the preceding paragraph, and was released from confinement on parole, with a projected "discharge from parole date" of June 23, 2027. The day following his release on parole (July 10, 2007), in accordance with directions contained in his parole certificate (issued on June 22, 2007), Plaintiff appeared at the office of his

local parole officer in Mineral Wells, Texas. At this initial meeting with his parole

officer, Plaintiff' parole officer served Plaintiff him with a "Sex Offender Advisement

Form" which informed him in writing that, effective immediately, Plaintiff was:

a) prohibited from "hav[ing] [any] unsupervised contact with any person 17 years of age or younger";

b) prohibited from "resid[ing] with, contact[ing], or caus[ing] to be contacted, any person 17 years of age or younger, in person, by telephone, correspondence, video or audio device, third person, media, or any electronic means";

c) prohibited from "travel[ing] outside…[his] approved county of residence";

d) prohibited from "becom[ing] involved in dating, marriage, or a platonic relationship with any person who has children 17 years of age or younger"; and

e) prohibited from "maintain[ing] or operat[ing] photographic equipment, to include Instamatic, still photo, video, or any electronic imaging equipment."

7.

On July 16, 2007, a written "Notice of Special Conditions" form concerning

Plaintiff was prepared and printed-out by an unknown person within the Parole Division

of the Texas Department of Criminal Justice. On August 8, 2007, Plaintiff was served

with a copy of the said "Notice of Special Conditions" by his supervising parole officer.

Among other "special conditions," the aforementioned "Notice" informed Plaintiff that

the Texas Board of Pardons and Paroles had delegated discretion, to his supervising

parole officer, to impose "Special Condition X and all components," and that his

supervising officer was thus invoking that discretion "as authorized by the Parole Panel."

Among other things, this "Notice of Special Conditions" informed Plaintiff that, effective

immediately, he was:

8

a) required to enroll, participate in, and comply with the "Sex Offender Program";

b) prohibited from "enter[ing] an institution of higher learning";

c) required to "[e]nroll in a sex offender treatment program";

d) prohibited from "participat[ing] in any volunteer activities";

e) prohibited from "possess[ing] sexually explicit literature"; and,

f) required to "[s]ubmit to polygraph testing."

8.

Prior to Plaintiff being presented with the documents described in the foregoing paragraphs five (5) through seven (7), no hearing guided by the procedural safeguards of notice, an opportunity to be heard, and knowledge of the factual basis upon which an official discretionary decision was to be made, as set out in *Meza v. Livingston*, 607 F.3d 392, 409-413 (5th Cir. 2010), was afforded Plaintiff.

9.

Approximately six (6) months after being released on parole on July 9, 2007, Plaintiff was ordered by his parole officer to submit to a "sex offender evaluation" as part of the conditions of his parole which required that he comply with the "Sex Offender Program" and "enroll in a sex offender treatment program." On February 14, 2008, in compliance with the foregoing order from his parole officer, and at the risk of having his parole revoked should he not comply, Plaintiff was compelled to undergo a "penile plethysmograph assessment" administered by Michael Strain of Fort Worth, Texas (hereinafter "Strain"), the Licensed Sex Offender Treatment Provider who was designated by parole officials to provide and monitor Plaintiff's "sex offender treatment."

10.

A "penile plethysmograph assessment" is a central component of "Special Condition X," and is routinely applied in sex offender treatment to persons who have previously been convicted of a reportable sex offense under Texas law. Administration of a "penile plethysmograph assessment," both objectively and subjectively as applied to Plaintiff, constitutes a grossly offensive and highly intrusive invasion into a person's constitutionally protected liberty interests in physical and mental privacy.[1] Furthermore, the results of "penile plethysmograph assessments" have been uniformly deemed scientifically unreliable, as well as inadmissible as evidence in any court of law, because there are no accepted standards for this test in the scientific community.[2]

11.

On March 21, 2008, Mr. Strain composed a written report for Plaintiff's parole officer, entitled "Psychosexual Results," which comprised the results of Plaintiff's performance on the aforementioned "penile plethysmograph assessment," along with several other tests purportedly administered for the purpose of evaluating Plaintiff's need for further sex offender treatment. As characterized by Strain, this written report to Plaintiff's parole officer constituted a "professional to professional consultation"; and a copy of this report was not provided to Plaintiff until shortly before the filing of the present suit.

---

[1] *See, Jennings v. Owens*, 585 F.Supp.2d 881, 892 (W.D.Tex. 2008), *reversed on other grounds*, 602 F.3d 652 (5ᵗʰ Cir. 2010).
[2] *Jennings v. Owens, supra*, 585 F.Supp.2d at 893 n. 114, *quoting United States v. Webber*, 451 F.3d 552, 565 n. 15 (9ᵗʰ Cir. 2006).

12.

In "the wake" of the U.S. District Court's decision in *Meza v. Livingston*, 623 F.Supp.2d 783 (W.D.Tex., March 24, 2009), over a year later on April 16, 2009, Texas parole officials adopted "emergency" rules for the limited purpose of providing the plaintiff in *Meza* with a due process hearing, the outcome of which would determine whether Meza's sex offender conditions of parole, previously imposed without due process, could constitutionally remain in force.[3]

13.

On March 10, 2011, ten (10) months after the U.S. Fifth Circuit Court of Appeals' decision which affirmed in substantial part the U.S. District Court's decision in *Meza v. Livingston*,[4] Texas parole officials adopted permanent rules ostensibly for the purpose of providing a due process hearing to *some* Texas parolees who, although never having been convicted of a "reportable sex offense" under Texas law, continue to be unconstitutionally subjected to the imposition of sex offender conditions of parole without due process.[5]

14.

On May 4, 2011, the Texas Court of Criminal Appeals in *Ex Parte Evans*, 338 S.W.3d 545, 552 (Tex.Crim.App. 2011), granted habeas corpus relief to a Texas parolee who had not previously been convicted of a reportable sex offense under Texas law, but whose parole had been revoked by Texas parole officials for violation of sex offender conditions imposed without due process, as determined by the Fifth Circuit's decision in

---

[3] *See, Court-Ordered Special Condition X Hearing for Raul Meza ("Emergency Rules")*, 35 Tex.Reg. 3353 (April 30, 2010).
[4] *Meza v. Livingston*, 607 F.3d 392 (5th Cir., May 20, 2010).
[5] *See, Hearing for Imposition of Sex Offender Treatment and/or Sex Offender Registration*, 36 Tex.Reg. 1682 (March 11, 2011).

*Meza v. Livingston, supra.* In *Ex Parte Evans*, the Court of Criminal Appeals further rejected the claim of Texas parole officials that only parolees released on "mandatory supervision," and not those released on "discretionary parole," are entitled to due process under the Fourteenth Amendment to the United States Constitution.[6]

15.

On May 31, 2011, following the Texas Court of Criminal Appeals' decision in *Ex Parte Evans, supra*, Defendant Jenkins, in his capacity as Director of the Parole Division of the Texas Department of Criminal Justice, adopted new policies and procedures ostensibly for the purpose of providing a due process hearing to all Texas parolees who, although never having been convicted of a "reportable sex offense" under Texas law, continue to be unconstitutionally subjected to the imposition of sex offender conditions of parole without due process.[7] Under these new procedures adopted on May 31, 2011, however, a parolee who has been unconstitutionally subjected to sex offender conditions, and who does not have a conviction for a sex offense, nonetheless *is not entitled to due process hearing* concerning imposition of sex offender conditions, unless he has been subjected to a "sex offender evaluation," as governed by another policy of the Parole Division,[8] "within the previous six months" of his refusal to waive such a hearing.[9] Under Parole Division policy, an "acceptable" sex offender evaluation "include[s]" the administration of a "penile plethysmograph assessment."[10]

---

[6] *Ex Parte Evans, supra*, 338 S.W.3d at 552.
[7] *See, Administrative Guidelines for Imposition of Special Condition 'X' for Offenders Without a Sex Offense Conviction,* PD/POP 3.6.8 (May 31, 2011). Parole Division Polices are available online at: http://www.tdcj.state.tx.us/policy/parole/parole-policies.htm#ch3sct6 [last visited September 3, 2011].
[8] *Sex Offender Treatment and Polygraph Guidelines*, PD/POP 3.6.9 (Nov. 7, 2007).
[9] *Administrative Guidelines for Imposition of Special Condition 'X' for Offenders Without a Sex Offense Conviction,* PD/POP 3.6.8; at page 2 of 7.
[10] *Sex Offender Treatment and Polygraph Guidelines*, PD/POP 3.6.9, *supra*, at page 2 of 15.

16.

On June 30, 2011, Plaintiff's parole officer, Defendant El-Amin, served Plaintiff with notice that since he refused to waive a due process hearing, and since had not been subjected to a sex offender evaluation since February, 2008, he would be required to submit to "an updated [sex offender] evaluation," to be administered by Mr. Strain, his sex offender treatment provider, as a prerequisite to receiving a due process hearing to determine if he should "continue to attend sex offender treatment." Upon inquiry, Plaintiff was further informed that such an "updated evaluation" would again require, as it did in February of 2008, that he submit to a "penile plethysmograph assessment."

17.

On August 3, 2011, Plaintiff through undersigned counsel notified Defendants Owens, Jenkins, Latham, El -Amin and others, by U.S. mail, that unless the sex offender conditions of Plaintiff's parole were removed within ten (10) days, Plaintiff would be filing suit to acquire that relief in the U.S. District Court for the Western District of Texas. In reply, these Defendants, by and through Defendant Betty Wells, General Counsel for the Texas Board of Pardons and Paroles, informed Plaintiff's counsel by letter dated August 9, 2011, that his demand letter dated August 3, 2011, would not be considered, for the reason that his conduct in sending the aforementioned demand letter constituted a Class A misdemeanor under Texas law.[11] On August 18, 2011, Plaintiff's counsel notified Defendants of Plaintiff's intention to file suit in the U.S. District Court for the Western District of Texas; and Defendants through Defendant Wells again replied

---

[11] The Defendants' reply cited Texas Government Code, Section 508.084, which requires that attorneys appearing before the Texas Board of Pardons and Paroles, on behalf of an inmate, submit a "fee affidavit" stating the compensation they have or expect to receive for their representation, and from whom such compensation has been or is expected to be received.

by letter, dated August 28, 2011, that Plaintiff's notice of intention to file suit in federal court constituted a Class A misdemeanor under Texas law. On August 29, 2011, Plaintiff's counsel filed "fee affidavit" with the Parole Division, informing it that he expected to receive his attorney's fees pursuant to Title 42 U.S.C. Section 1988, and that he expected to receive such fees directly from the Defendants in their personal capacities, whom he specifically identified by name.

18.

On Wednesday, August 31, 2011, at approximately 2:00 p.m., Plaintiff was contacted by his parole officer, Defendant El-Amin, who informed him that if he did not submit to a sex offender evaluation at Mr. Strain's office by 5:00 p.m. that day, Plaintiff's parole would be revoked and a warrant would be issued for his arrest. Based upon the advice of his counsel, Plaintiff did not comply with Defendants' command. Additionally, after conferring with and based upon the advice of his counsel, Plaintiff did not attend his weekly "sex offender treatment" appointment scheduled at Mr. Strain's office in the evening of the same day, Wednesday, August 31, 2011, as required by the sex offender conditions of his parole unlawfully imposed.

19.

At approximately 2:30 p.m. on August 31, 2011, after he received a report from Plaintiff concerning the communication from Defendant El-Amin described in the preceding paragraph, undersigned counsel for Plaintiff telephoned Defendant El-Amin. During that conversation, Defendant El-Amin confirmed to Plaintiff's counsel that if Plaintiff did not submit to a sex offender evaluation by Mr. Strain, which would include Plaintiff's submission to a "penile plethysmograph assessment," proceedings to revoke

14

Plaintiff's parole would be immediately initiated and a warrant would be issued for Plaintiff's arrest. The Plaintiff's counsel then attempted to relate to Defendant El-Amin that such an action by either Defendant El-Amin or others would not only be unconstitutional, but would expose any person responsible for that action potentially liable to Plaintiff for substantial compensatory damages under federal law. The Plaintiff's counsel further encouraged Defendant El-Amin to seek legal advice on this question from an attorney not employed by the Texas Board of Pardons and Paroles. In response to this last suggestion, Defendant El-Amin abruptly hung up the phone and thus ended the conversation.

20.

On Thursday morning, September 1, 2011, Plaintiff was again contacted by his parole officer, Defendant El-Amin, who ordered Plaintiff to appear and report to his office at 3:00 p.m., Tuesday, September 6, 2011. Defendant El-Amin further informed Plaintiff that a sex offender evaluation, including the administration of a "penile plethysmograph assessment," had been scheduled at Mr. Strain's office at 2:00 p.m. on Wednesday, September 7, 2011, and that Plaintiff's failure to appear and submit to such an evaluation would certainly result in Plaintiff's immediate arrest and the revocation of his parole. While Plaintiff fully intends to report to his parole officer as directed, he has no intention of again submitting to a "penile plethysmograph assessment," or any other sex offender condition of parole, unless or until his is provided by Defendants with a due process hearing in conformity with the Fifth Circuit's decision in *Meza v. Livingston*, *supra.*

15

21.

The Plaintiff has no reasonable (or for that matter, any unreasonable) expectation that he will receive a due process hearing in the foreseeable future, as required by the Fifth Circuit's decision in *Meza v. Livingston, supra.*   On October 6, 2009, uncontroverted trial testimony was given by Troy Fox, the "Board Administrator" for the Texas Board of Pardons and Paroles, which disclosed that, at that time, approximately "6,900" parolees without prior sex offense convictions had been unconstitutionally placed on sex offender conditions of parole.[12] Furthermore, as recently disclosed by Texas parole officials in response to a "Texas Public Information Act" request submitted by the *Austin-American Statesman* newspaper; during the three months since May of 2011, Texas Parole officials have provided ONLY THREE (3) due process hearings to the aforementioned "6,900" parolees who have been unconstitutionally placed on sex offender conditions of parole.[13]

**(B)**

**<u>Legal Claims</u>**

1.

The moment after Plaintiff was released on parole, he held a constitutionally protected liberty interest, subject to deprivation only after provision of procedural due process, in being free from conditions of parole that would impose "atypical and significant hardships" on him in relation to the ordinary incidents of parole. In this connection, Plaintiff alleges that the Special Conditions of parole imposed on him by the Defendants, which require Plaintiff to register as a "sex offender," and which require him

---

[12] *Graham v. Owens*, No. A-08-CA-6-SS (W.D.Tex.), Trial Transcript, Vol. 3, p. 236 (Oct. 6, 2009)(Testimony of Troy Fox, Board Administrator for the Texas Board of Pardons and Paroles).
[13] *Austin-American Statesman* (August 18, 2011).

to comply with the special conditions of parole stated above in paragraphs III (A)(5) through (9), inflict "atypical and significant hardships" on Plaintiff in relation to the ordinary incidents of parole.

2.

The policies and procedures adopted and implemented by Defendants with respect to the imposition of Condition "X," and the manner in which the challenged components of Condition X have been imposed by Defendants, have deprived Plaintiff, and will continue to deprive Plaintiff, of his constitutional rights to procedural due process and "fundamental fairness" in violation of the Fourteenth Amendment to the United States Constitution. Specifically, and in addition to the other procedural due process deficiencies alleged herein, the Defendants' policy of requiring Plaintiff to undergo a "penile plethysmograph assessment" as a precondition to receiving due process constitutes a flagrant violation of the Fourteenth Amendment, and evinces, on the part of Defendants, a conscious, deliberate decision to commit such a violation.

3.

At all times relevant to this suit, Defendants were acting under color of law; and their actions, individually and collectively, as described in the preceding paragraph, subjected, or caused Plaintiff to be subjected, to the deprivation of his constitutional right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution. Thus, Defendants are liable to Plaintiff under Title 42 U.S.C. Section 1983 for the compensatory damages Plaintiff has sustained as the result of their acts and omissions so alleged.

4.

Defendant Owens is the Presiding Officer of the Texas Board of Pardons and Paroles.[14] In that capacity, Defendant Owens is responsible for the employment and supervision of parole commissioners, the General Counsel to the Board, the Board Administrator who manages the day-to-day activities of the Board, and hearing officers,[15] and is responsible for establishing caseloads and required work hours for members of the board and parole commissioners.[16] Under Texas law, Defendant Owens is vested with discretionary authority to establish policies and procedures to further the efficient administration of the business of the Board, and to delegate responsibilities and authority to other members of the board, parole commissioners, or to employees of the board.[17] Finally, as a Member of the Board of Pardons and Paroles, Defendant Owens is responsible for deciding whether circumstances warrant or require the modification or withdrawal of conditions of parole.[18]

5.

The Plaintiff alleges that when performing or failing to perform the foregoing supervisory responsibilities described in the preceding paragraph, Defendant Owens was an active participant, and played an integral part in the formulation of official policy, which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; and, that in light of the official duties assigned to her, the need for more or different supervision of her subordinates was so obvious, and the inadequacy of her supervision so likely to result in the violation of constitutional rights, that her acts and

---

[14] Texas Government Code, Section 508.001(1).
[15] Texas Government Code, Section 508.040(a).
[16] Texas Government Code, Section 508.036 (a)(2).
[17] Texas Government Code, Section 508.035(d).
[18] Texas Government Code, Section 508.0441(a)(3).

omissions evidenced a "deliberate indifference" to, and a "moving force" behind the violation of, Plaintiff's right to procedural due process.

6.

Defendant Wells is the General Counsel to the Board of Pardons and Paroles. In that capacity, she is required to give legal advice concerning parole matters, including the imposition, modification and withdrawal of conditions of parole, to the Presiding Officer of the Texas Board of Pardons, to Member of the Board of Pardons and Paroles, to Parole Board Commissioners, to the Board Administrator who manages the day-to-day activities of the Board, and to Parole hearing officers. The Plaintiff alleges that when performing or failing to perform the foregoing responsibilities, Defendant Wells was an active participant, and played an integral part, in the formulation of official policy which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; that in light of the official duties assigned to her, the need for more or different legal advice in this context was so obvious, and the inadequacy of her legal advice so likely to result in the violation of constitutional rights, that her legal advice, or lack thereof, evidenced a "deliberate indifference" to Plaintiff's right to procedural due process. Additionally, Plaintiff alleges that the legal advice given by Defendant Wells to the Presiding Officer of the Texas Board of Pardons, to Members of the Board of Pardons and Paroles, to Parole Board Commissioners, to the Board Administrator who manages the day-to-day activities of the Board, and to Parole hearing officers, was directly contrary to "clearly established law," and that such legal advice was a "moving force" behind the procedural due process violations Plaintiff has alleged.

7.

Defendants Davis, Gonzalez, Guitierrez, LaFavers, Leeper, and Skyrme, are each Members of the Texas Board of Pardons and Paroles. As Members of the Board of Pardons and Paroles, these Defendants are responsible for adopting rules relating to the decision-making processes used by the board and parole panels;[19] for developing for board members and parole commissioners a comprehensive training and education program on the criminal justice system, with special emphasis on the parole process;[20] assume responsibilities delegated to them by Defendant Owens as Presiding Officer;[21] and are responsible for deciding whether circumstances warrant or require the modification or withdrawal of conditions of parole.[22] The Plaintiff alleges that when performing or failing to perform the foregoing responsibilities, these Defendants were active participants, and played an integral part, in the formulation of official policy which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; that in light of the official duties assigned to them by law, the need for more or different policies in this context was so obvious, and the inadequacy of their pre-existing policies so likely to result in the violation of constitutional rights, that their acts or omissions evidenced a "deliberate indifference" to, and were a "moving force" behind the violation of, Plaintiff's constitutional right to procedural due process.

8.

Defendants Freeman, Garcia, Hensarling, Hightower, Kiel, Moberly, Morales, Ruzicka, Shipman and Speier, are each "Commissioners" employed by the Texas Board

---

[19] Texas Government Code, Section 508.036(b)(1).
[20] Texas Government Code, Section 508.042 (a).
[21] Texas Government Code, Section 508.035(d)(1).
[22] Texas Government Code, Section 508.0441(a)(3).

of Pardons and Paroles.[23] As Commissioners of the Board of Pardons and Paroles, these Defendants are responsible for deciding whether circumstances warrant or require the modification or withdrawal of conditions of parole.[24] The Plaintiff alleges that when performing or failing to perform the foregoing responsibilities, these Defendants were active participants, and played an integral part, in the formulation of official policy which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; that in light of the official duties assigned to them by law, the need for more or different policies in this context was so obvious, and the inadequacy of pre-existing policies so likely to result in the violation of constitutional rights, that their acts or omissions evidenced a "deliberate indifference" to, and were a "moving force" behind the violation of, Plaintiff's constitutional right to procedural due process.

9.

Defendant Jenkins is the Director of the Parole Division of the Texas Department of Criminal Justice. In that capacity, Defendant Jenkins is responsible for the administration of the division,[25] and is responsible for formulating and implementing policy for the Parole Division. The Plaintiff alleges that when performing or failing to perform the foregoing responsibilities, Defendant Jenkins was an active participant, and played an integral part, in the formulation of official policy, including but not limited to the *Administrative Guidelines for Imposition of Special Condition 'X' for Offenders Without a Sex Offense Conviction,* PD/POP 3.6.8 (May 31, 2011); and the *Sex Offender Treatment and Polygraph Guidelines*, PD/POP 3.6.9 (Nov. 7, 2007); which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; that

---

[23] Texas Government Code, Section 508.0001(8).
[24] Texas Government Code, Section 508.0441(a)(3).
[25] Texas Government Code, Section 508.111(b).

in light of the official duties assigned to him, the need for more or different policies in this context was so obvious, and the inadequacy of pre-existing policies so likely to result in the violation of constitutional rights, that his acts or omissions evidenced a "deliberate indifference" to, and was a "moving force" behind the violation of, Plaintiff's constitutional right to procedural due process.

10.

Under Texas law, in the case of parole, the Director of the Parole Division of the Texas Department of Criminal Justice or a designated agent of the Director or, in another case, the Texas Board of Pardons and Paroles on order by the governor, may issue a warrant for the arrest of a parolee if grounds exist to believe the parolee has violated a rule or condition of his release on parole.[26]

11.

Defendant Latham is the "Sex Offender Program Specialist" with the Parole Division of the Texas Department of Criminal Justice. In that capacity, Defendant Latham has been delegated official responsibility for formulating and implementing policies for the Sex Offender Program within the Parole Division. The Plaintiff alleges that when performing or failing to perform the foregoing responsibilities, Defendant Latham was an active participant, and played an integral part, in the formulation of official Sex Offender Program policies, including but not limited to the *Administrative Guidelines for Imposition of Special Condition 'X' for Offenders Without a Sex Offense Conviction,* PD/POP 3.6.8 (May 31, 2011); and the *Sex Offender Treatment and Polygraph Guidelines,* PD/POP 3.6.9 (Nov. 7, 2007); which directly caused the deprivation of Plaintiff's constitutional rights to procedural due process; that in light of

---

[26] Texas Government Code, Sections 508.251(a)(1) and 508.252(3).

22

the official duties assigned to her, the need for more or different policies in this context was so obvious, and the inadequacy of pre-existing policies so likely to result in the violation of constitutional rights, that her acts or omissions when formulating and implementing the Sex Offender Program policies evidenced a "deliberate indifference" to, and was a "moving force" behind the violation of, Plaintiff's constitutional right to procedural due process.

12.

Defendant El-Amin is Plaintiff's supervising parole officer, and is a Supervising Parole Officer within the Parole Division of the Texas Department of Criminal Justice. In that capacity, and as appointed by Defendant Jenkins, Defendant El-Amin has been assigned the duties of assessment of risks and needs, investigation, case management, and supervision of Plaintiff to ensure that Plaintiff is complying with the conditions of their parole.[27] The Plaintiff alleges that by imposing and enforcing the conditions of parole challenged by Plaintiff herein, Defendant El-Amin has directly violated Plaintiff's constitutional right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

**IV.**

**<u>Relief Requested</u>**

The Plaintiff respectfully moves the Court to:

1) Enter a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, after notice to Defendants, as requested by Plaintiff in his Application for such relief separately filed contemporaneously with the filing of this Original Complaint;

---

[27] Texas Government Code, Section 508.001(7).

2) Enter an Order, in accordance with Rule 57 of the Federal Rules of Civil Procedure, that Plaintiff's request for a preliminary injunction be "advanced" on the Court's calendar and set for a "speedy hearing";

3) Enter a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, after notice to Defendants, that prohibits the Defendants, their agents, successors, assigns, or anyone acting in concert with them, from engaging in any actions intended for the purpose, or likely to cause, any restraint of Plaintiff's liberty based on his failure to comply with the conditions of his parole described in this Original Complaint, unless Plaintiff is first provided by Defendants with a hearing guided by the procedural safeguards of notice, an opportunity to be heard, and knowledge of the factual basis upon which an official discretionary decision is to be made, as set out in *Meza v. Livingston*, 607 F.3d 392, 409-413 (5th Cir. 2010);

2) After hearing and trial, if necessary, issue a Declaratory Judgment (under 28 U.S.C. §2201) finding that the process employed by the Defendants in the present case violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it failed to provide Plaintiff with the procedural safeguards of meaningful notice, a fair opportunity to be heard, or prior knowledge of the factual basis upon which an official discretionary decision was to be made, and because no finding was made that Plaintiff possessed "a threat to society by reason of his lack of sexual control," before the challenged Special Conditions of parole were imposed;

3) After hearing or trial, if necessary, award Plaintiff compensatory damages (under 42 U.S.C. § 1983) against Defendants Owens, Wells, Davis, Gonzales, Guitierrez, LaFavers, Leeper, Skyrme, Freeman, Garcia, Hensarling, Hightower, Kiel, Marshall,

Moberly, Morales, Ruzicka, Shipman, Speier, Jenkins, Latham and El-Amin, jointly and severally, in their respective *Individual* or *Personal* Capacities, for their active conduct, or deliberately indifferent omissions, which have subjected, or caused Plaintiff to be subjected, to the deprivation of his federally protected constitutional right to procedural due process, all in violation of *clearly established* law;

4) Issue a permanent injunction (under 28 U.S.C. §1343) prohibiting the Defendants, their agents, successors, assigns, or anyone acting in concert with them, from engaging in any actions intended for the purpose, or likely to cause, interference with the Plaintiff's rights to liberty interests, as described herein, unless and until Plaintiff is first provided by Defendants with a hearing guided by the procedural safeguards of notice, an opportunity to be heard, and knowledge of the factual basis upon which an official discretionary decision is to be made, as set out in *Meza v. Livingston*, 607 F.3d 392, 409-413 (5th Cir. 2010);

6) Award Plaintiff nominal damages (under 42 U.S.C. §1983) for the violations of his *absolute* constitutional right to procedural due process alleged herein;

7) Award Plaintiff reasonable costs and reasonable attorney's fees (under 42 U.S.C. §1988) which are shown to have been necessarily incurred by Plaintiff in prosecuting this matter; and

8) Award Plaintiff any other relief to which he may show himself entitled.

Respectfully submitted,

Richard Gladden
Texas Bar No. 07991330
*Attorney-in-Charge for Plaintiff*

Law Office of Richard Gladden
1411 North Elm Street
Denton, Texas 76201
940/323-9307 (voice)
940/312-6830 (fax)

&

Wm. T. Habern
Texas Bar No. 08665500
*Co-Counsel for Plaintiff*

Habern, O'Neil & Pawgan, L.L.P.
P.O. Box 8930
Huntsville, Texas 77340
936/435-1380 (voice)
936/435-2376 (facsimile)