UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BUDDY JENE YEARY,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. A:11-cv-768-LY |
| | § | |
| **RISSIE OWENS,** *et al.*, | § | |
| Defendants. | § | |

## MOTION TO DISMISS

NOW COME Stuart Jenkins, Janet Latham and Earl El-Amin, through the Attorney General of Texas, and move to dismiss Plaintiff's suit pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

### I. PROCEDURAL BACKGROUND

Plaintiff, a releasee on whom Special Condition X[1] was imposed following his release on parole from the Institutional Division of the Texas Department of Criminal Justice in 2007, brought this suit against 22 defendants, including Jenkins, Latham and El-Amin, pursuant to 42 U.S.C. § 1983 on Sept. 6, 2011. (D.E. 1) Simultaneously with filing his suit, Plaintiff also filed a motion for temporary restraining order requesting that "Defendants" be specifically prohibited from enforcing 16 specific conditions of his parole. (D.E. 2) The Court conducted a hearing on the temporary restraining order on Sept. 6, 2011, before any of the Defendants had been served with process, and granted the requested order without bond. (D.E. 4) The Court further set a hearing on Plaintiff's application for a preliminary injunction for Sept. 20, 2011. *Id*.

---

[1] A description of the conditions of Special Condition X is found in *Meza v. Livingston*, 607 F.3d 392, 396 n. 6 (5th Cir. 2010).

El-Amin was served with process on Sept. 13, Jenkins was served with process on Sept. 14 and Latham was served on Sept. 15. (D.E. 11, 16, 21)

Following hearing on Sept. 20, 2011, the Court granted Plaintiff's application for preliminary injunction in part, ordering the "Defendants" from taking any action to revoke Plaintiff's parole during the pendency of this suit. (D.E. 32) The Court did not, however, prohibit "Defendants" from continuing the process of evaluating whether Special Condition X should continue to be a special condition of Plaintiff's parole.

## II.  MOTION TO DISMISS

To succeed in a action brought pursuant to 42 U.S.C. § 1983, the plaintiff must establish a violation of the laws or constitution of the United States and that this deprivation of rights was caused by a person acting under color of state law. *Hernandez-Hernandez v. Fagerberg*, 392 Fed.Appx. 271, 272, (5th Cir. 2010), *citing Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 5th Cir. 1994).

A claim may be dismissed under FED. R. CIV. P. 12(b)(6) when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face. *Amacker v. Renaissance Asset Management LLC*, 2011 WL 4106297, 2 (5th Cir. 2011), *citing Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 570, 127 S.Ct. 1955, (2007). The plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

Generally, a court ruling on a Rule 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). "It is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007). The district court may take judicial notice of its own records. U.S. v. Valencia, 44 F.3d 269, 273 (5th Cir. 1995), citing *Horowitz v. Henderson*, 514 F.2d 740, 741 n. 1 (5th Cir. 1975) (sentencing judge, even had he not presided over trial entitled to take judicial notice of proceedings in open court.); *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir.1985) (It was within the court's discretionary authority to judicially notice the trial transcript of the earlier portions of the same proceeding.).

### III.  ARGUMENT

**A.  Defendants are entitled to immunity under the 11th Amendment as to Plaintiff's claim for damages in their official capacity.**

Government officials acting in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983, and thus are not proper parties to claims purportedly

brought pursuant to § 1983. *Miles v. Texas Bd. of Pardons & Paroles*, 379 Fed.Appx. 420, 2010 WL 2130639, 1 (5th Cir. 2010). Jenkins, Latham and El-Amin are all government officials employed by the Parole Division of the Texas Department of Criminal Justice and all were acting in their official capacity at all times relevant to this lawsuit. As such, Jenkins, Latham and El-Amin are all immune from suit for damages in their official capacity. *See Littles v. Board of Pardons and Paroles Division*, 68 F.3d 122, 123 (5th Cir. 1995); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304 (1989). Defendants are therefore entitled to dismissal of Plaintiff's claims against them in their official capacity on Eleventh Amendment grounds.

**B.** ***Ex parte Young* does not provide an exception to Eleventh Amendment immunity where none of the Defendants can provide Plaintiff redress as a matter of law.**

For more than a century, however, an exception to Eleventh Amendment immunity has existed in cases which seek injunctive relief. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908). To meet the *Ex parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tennessee Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). To seek relief under the *Ex Parte Young* exception, a plaintiff must establish standing by showing: (1) injury in fact; (2) causation; and (3) redressability. *Gregory v. Texas Youth Com'n*, 111 Fed.Appx. 719, 721, 2004 WL 2244241, 2 (5th Cir. 2004), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992).

Defendants deny that Plaintiff has suffered any injury in fact and further deny that they are the legal cause of any such injury. Furthermore, and conclusively, neither Jenkins, nor Latham nor El-Amin is capable of providing Plaintiff the relief he seeks – the removal of Special Condition X.

The Texas Board of Pardons and Paroles was created by TEX. CONST. ART. IV, § 11, enacted in 1936. The provision provides in relevant part that "The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep a record of its actions and the reasons for its actions."

In 1989, the 71st Legislature reorganized various Texas criminal justice agencies by merging prison operations carried out by what had been known for decades as the Texas Department of Corrections with parole functions performed by the Board of Pardons and Paroles and adult probation functions under the authority of the newly created Texas Department of Criminal Justice. *See* Acts, 71st Leg., ch. 785, § 1.11(a). As of the effective date of this legislation, therefore, the Board's primary responsibility of deciding which offenders would be released on parole and under what conditions was subsumed into the newly created TDCJ.

Within months, however, the Sixth Called Session of the 71st Legislature undid the 1989 legislation and separated the Board of Pardons and Paroles from TDCJ. *See* Acts, 71st Leg., Sixth C.S., ch. 25, §§ 2, 4, 5. In the same bill, the Legislature also created a Parole Division within the Texas Department of Criminal Justice. *Id*. As of the effective date of Acts, 71st Leg., Sixth C.S., ch. 25, §§ 2, 4, 5 in 1990, therefore, the Board of Pardons and Paroles existed as a separate entity from the Texas Department of Criminal

Justice, and from TDCJ's Parole Division. TEX. GOV'T. CODE ANN. § 491.001 (a)(3) and (7) and § 508.001(1) and (4).

Since the legislative enactments of 1990, the principal duty imposed on the Board is the duty to "determine . . . conditions of parole or mandatory supervision, *including special conditions*." TEX. GOV'T. CODE. ANN. § 508.0441(a)(2) (emphasis added). The Board also is responsible for "the *modification and withdrawal* of conditions or parole or mandatory supervision." TEX. GOV'T. CODE. ANN. § 508.0441(a)(3) (emphasis added). The Board also has the duty to determine "the *continuation, modification and revocation of parole* or mandatory supervision." TEX. GOV'T. CODE. ANN. § 508.0441(a)(5) (emphasis added).

The Pardons and Paroles Division, in contrast, is established as a division within the Texas Department of Criminal Justice. TEX. GOV'T. CODE. ANN. § 493.002. Its responsibility is to "supervise and reintegrate felons into society after release from confinement." TEX. GOV'T. CODE. ANN. § 493.005. This duty mirrors the Division's duty to "investigat[e] and supervis[e] of all parolees" found in TEX. GOV'T. CODE. ANN. § 508.112.

In 1997, the Fifth Circuit recognized that the Board – the "parole system" – is a separate agency from TDCJ – the "prison system." *See generally Johnson v. Rodriguez*, 110 F.3d 299, 303-305 (5th Cir. 1997). The Fifth Circuit later described the two agencies' distinct roles and responsibilities as follows:

> [T]he Texas Board of Pardons and Parole is a *separate entity* from the Parole Division of the Texas Department of Corrections, and each entity has *different responsibilities* under the Government Code. TEX. GOV'T. CODE ANN. § 491.001. The Board of Pardons and Parole is responsible for determining *which* inmates are to be released on parole or mandatory supervision. TEX. GOV'T. CODE. ANN. § 508.0441(a)(1). The Pardons and

> Parole Division of the TDCJ is a *different entity* that is responsible for supervising and reintegrating felons into society. TEX. GOV'T. CODE ANN. § 493.005.

*Norman v. Texas Dept. of Criminal Justice, Institutional Div.*, 293 Fed.Appx. 285, 288, (5th Cir. 2008) (emphasis added).

Based on the confusing legislative history of corrections and paroles over last two decades, and the sometimes overlapping nomenclature of the Board vis-à-vis the Division, the courts have understandably, if mistakenly, found that the Parole Division and the Board of Pardons and Paroles share responsibility for constitutional violations.[2] While the Division gathers data and presents parole cases to the Board, the foregoing history establishes that only members of the Board of Pardons and Paroles and commissioners hired by the Board – acting as parole panels – are authorized by Texas law to grant or deny parole or impose, revoke or modify any conditions of parole.

As applied to the facts of this case, Plaintiff was assigned Special Condition X by the Board of Pardons and Paroles as a condition of his parole in 2007. Following the Texas Court of Criminal Appeals' decision on May 4, 2011, in *Ex parte Evans*, 338 S.W.3d 545, 556 (Tex. Crim App. May 4, 2010), the Parole Division developed and adopted new policies to provide administrative guidelines for the pre-hearing evaluation of parolees on whom Special Condition X had been imposed by the Board of Pardons and

---

[2] *See, e.g., Meza v. Livingston*, 607 F.3d 392, 412 (May 20, 2010) and *Meza v. Livingston*, 2010 WL 6511727 (5th Cir. Oct. 19, 2010) (finding Parole Division plays an 'integral role in determining a prisoner's mandatory supervision conditions.'). *See also, Ex Parte Evans*, 338 S.W.3d 545, 556 (Tex. Crim App. May 4, 2010) (ordering copy of decision ordering "immediate reinstatement of his release on mandatory supervision and removal of 'Special Condition X' from the terms of his parole" to be delivered to *TDCJ*); *Ex parte Baker*, No. WR-11,11609 (Tex. Crim. App. Sept. 14, 2011) ( "*TDCJ* did not provide adequate due process protections before placing the sex offender conditions on Applicant's parole."); *Ex parte Young*, 2011 WL 2420043 (Tex. Crim. App. June 15, 2011) (Ordering *TDCJ* general counsel's office to file affidavit as to whether Evans was being complied with).

Paroles, but who did not have an adjudication for a sex offense – so-called "Coleman cases." (Division Defendants' Exs. 3, 11)[3]

The testimony of Stuart Jenkins and Janet Latham at the hearing on Plaintiff's application for preliminary injunction, and the exhibits introduced through them, establish that the Division's post-*Evans* policy requires that the 139 offenders on whom Special Condition X may have been unlawfully imposed by the Board of Pardons and Paroles to undergo evaluation by a licensed sex offender treatment provider to determine whether they continue to pose a risk to society due to a lack of sexual control if they have not undergone an evaluation in the previous six months. (Ex. 3 at 2) Where, after assessment, the LSOTP does not recommend treatment, Latham testified that she transmits that information to the Board of Pardons and Paroles with a recommendation that the Special Condition X be withdrawn. (Ex, 3 at 2-3, Ex. 11) Jenkins testified that as of Sept. 20, 2011, the Board had removed Special Condition X in 189 cases where treatment was not recommended. Where the LSOTP recommends sex offender treatment, the policy requires notification to the Parole Division's parole supervisor, who authorizes the releasee's parole officer to provide the parolee notice of his right to a hearing consistent with *Evans*.[4] Regardless of whether the LSOTP recommends treatment, the last box on the flow chart – the ultimate decision as to imposing, continuing, modifying or revoking the imposition of Special Condition X under the statutory scheme – belongs to the Board of Pardons and Paroles and not to the Parole Division, Latham testified. (Division Defendants' Ex. 11)

---

[3] References are to Parole Division exhibits admitted without objection at the Sept. 20, 2011, hearing on Plaintiff's application for preliminary injunction.

[4] Releasees may also waive hearing. (Ex. 3 at 4)

Based on Plaintiff's complaint and the evidence introduced during the hearing on Sept. 20, it is undisputable that neither Jenkins, nor Latham, nor El-Amin have any authority under Texas law to provide Plaintiff the redress he seeks. None of them may order special conditions on Plaintiff's parole; none of them may continue, modify, or revoke his parole; nor may any of them continue, modify or revoke any mandatory or special condition attached to his parole by the Board of Pardons and Paroles. Moreover, neither Jenkins, nor Latham, nor El-Amin have any control whatsoever over the LSOTP's treatment recommendation – their job is simply to see that Plaintiff is evaluated as required so that the Board of Pardons and Paroles has the information it needs to make a decision as to whether Plaintiff should continue to be supervised under Special Condition X. Assuming for purposes of argument Plaintiff has pleaded facts to support causation and injury, he cannot establish the "redressability" required to overcome immunity via *Ex parte Young* in the circumstances of this case. Plaintiff's claim for injunctive relief against Jenkins, Latham and El-Amin must therefore be dismissed for failure to state a claim.

**C.     Defendants are entitled to qualified immunity where their acts or omissions did not violate clearly established law of which reasonable officials would have been aware**.

Qualified immunity shields federal and state officials from suits seeking damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The lower courts have discretion to

decide which of the two prongs of qualified-immunity analysis to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S.Ct. at 2085. Government officials' conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S.Ct. at 2083, *citing Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). Justice Scalia, writing for the *al-Kidd* majority, noted:

> We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*al-Kidd*, 131 S.Ct. at 2084 (citations omitted).

Plaintiff's suit follows a trio of decisions by the Fifth Circuit and the Texas Court of Criminal Appeals centering on the question of whether, and under what circumstances, Special Condition X may be imposed on a releasee's conditions of parole in the absence of an adjudication for a sex offense.

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), a mandatory releasee challenged the revocation of his mandatory release where he was not given advance notice or a hearing to contest the imposition of sex-offender therapy and sex-offender registration conditions. *Coleman*, 395 F.3d at 219. The Fifth Circuit, applying the rationale of *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254 (1980), found the Texas sex-

offender therapy program "qualitatively different" from other conditions which may attend an inmate's release. *Coleman*, 395 F.3d at 223. Reversing the district court's denial of Coleman's habeas petition and remanding the case for further proceedings, the circuit court held that "[T]he Due Process Clause, as interpreted in *Vitek*, provides Coleman with a liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions." *Id*. Defendant's motion for rehearing en banc was denied. *Coleman v. Dretke (Coleman II)*, 409 F.3d 665 (5th Cir. 2005).

Three years *Coleman II*, Raul Meza, who had been released on mandatory supervision after pleading guilty to the murder of 9-year-old Kendra Page and who admitted to sexually assaulting her during the course of the murder, challenged, among other conditions, the imposition of Special Condition X. *Meza v. Livingston*, 623 F.Supp.2d 782, 786, 788 (W.D. Tex. 2005). The district court concluded that the hearing mandated in *Coleman* had not been provided to Meza and ordered that "the State" provide him with an appropriate hearing regarding imposition of sex-offender conditions on his parole consistent with its findings. *Meza*, 623 F.Supp.2d at 797. The due process to which Meza was entitled comprised "(1) written notice in advance of the hearing; (2) disclosure of the evidence on which the State is relying; (3) a hearing, scheduled sufficiently after the notice to permit Meza to prepare, at which he will have the opportunity to be heard in person, represented by counsel, and to present documentary evidence in his support; (4) an opportunity at the hearing to call witnesses and confront and cross examine State witnesses, 'except upon a finding, not arbitrarily made, of good cause for not permitting each as to a particular witness'; (5) an independent decision

maker; and (6) a written statement by the fact-finder as to the evidence relied upon and the reasons for the decision." *Meza*, 623 F.Supp.2d at 796. On appeal, the Fifth Circuit affirmed all but one – representation by counsel – of the remedial due-process protections ordered by the trial court. *Meza v. Livingston*, 607 F.3d 392 (5th Cir. May 20, 2010). On remand, the Court of Appeals expanded and reiterated its previous judgment and remanded the case to district court.

Following the Fifth Circuit's decision in *Meza*, Jonathan Evans, a Texas parolee filed an application for a writ of habeas corpus claiming that the "Parole Division" had improperly placed Special Condition X on his parole without due process and that it had unlawfully revoked his parole for violations of the special condition. On May 4, 2011, the Texas Court of Criminal Appeals, adopting the *Meza* analysis and concluding that Evans had been denied due process in the imposition of Special Condition X, granted habeas relief and ordered the immediate reinstatement of Evans's release on mandatory supervision and the removal of Special Condition X from the terms of his parole. *Ex parte Evans*, 338 S.W.3d 545 (Tex. Crim. App. 2011).

At most, the foregoing authorities direct that Special Condition X shall not be imposed before the hearing described in *Meza*, and further imply that parolees whose parole has been revoked for alleged violation of Special Condition X in the absence of a hearing may be entitled to the immediate removal of the condition and restoration to parole. Yet from *Coleman* through *Meza* to *Ex parte Evans* not a single federal or state trial or appellate court has held that the Parole Division – erroneously assuming the Division has authority to do so – must issue a blanket *pre-hearing* revocation or suspension of Special Condition X on all releasees whose due-process rights may have

been violated. Nor, contrary to Plaintiff's implication, is there any suggestion in *Coleman*, *Meza* or *Evans* that Special Condition X must be imposed before sex-offender evaluation. From these facts, a state official in the position of Jenkins, Latham or El-Amin could reasonably conclude that no *future* parolee may have Special Condition X imposed on his parole without the hearing described in *Meza*, but that *existing* parolees who may have had Special Condition X wrongfully imposed on their parole by the Board of Pardons and Paroles – the only entity which has authority to impose the condition – without a hearing will continue to be required to comply with Special Condition X until the earlier of either (1) a judicial determination that the condition was unlawfully imposed or (2) the Board's determination, based on a current evaluation by a LSOTP, that Special Condition X is not required. Even if mistaken, such a conclusion would be reasonable in light of Defendants' overarching duty to ensure public safety, and where the potential harm of removing Special Condition X from a dangerous sex offender – Raul Meza, for example – is greatly outweighed by the current benefit of maintaining the condition on fewer than 140 convicted felons for a short time until an evaluation can be made by an LSOTP and a determination can be made by the Board of Pardons and Paroles. Jenkins, Latham and El-Amin are therefore entitled to qualified immunity in this case. The Court should dismiss Plaintiff's claim against them for failure to state a claim.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's suit against Jenkins, Latham and El-Amin should be dismissed with prejudice for failure to state a claim.

        Respectfully submitted,

        **GREG ABBOTT**
        Attorney General of Texas

        **DANIEL T. HODGE**
        First Assistant Attorney General

        **BILL COBB**
        Deputy Attorney General for Civil Litigation

        **DAVID C. MATTAX**
        Director of Defense Litigation

        **DAVID A. TALBOT, JR.**
        Assistant Attorney General
        Chief, Law Enforcement Defense Division

        <u>/s/ Seth B.Dennis</u>
        **SETH BYRON DENNIS**
        Assistant Attorney General
        Attorney-in-Charge
        Texas Bar No. 00790580

        <u>/s/ Allan K. Cook</u>
        **ALLAN K. COOK**
        Assistant Attorney General
        Attorney-in-Charge
        Texas Bar No. 24004374

        Office of the Attorney General
        P.O. Box 12548
        Austin TX 78711-2548
        (512) 463-2080/Fax (512) 495-9139

        **ATTORNEYS FOR JENKINS, LATHAM and EL-AMIN**

**NOTICE OF ELECTRONIC FILING**

I, **ALLAN K. COOK**, Assistant Attorney General of Texas, certify that I have submitted for filing a true and correct copy of the foregoing pursuant to the Electronic Case File system of the Western District of Texas, on Oct. 4, 2011.

/s/ Allan K. Cook
**ALLAN K. COOK**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **ALLAN K. COOK**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing has been served United States mail, postage prepaid, on Oct. 4, 2011, addressed to:

Richard Scott Gladden
Law Office of Richard Gladden
1411 N. Elm St.
Denton TX 76201

William T. Habern
Habern, O'Neil & Pawgan, LLP
P.O. Box 8930
Huntsville TX 77340

Bruce Garcia
Office of the Attorney General
Law Enforcement Defense Division
(By Hand)

Celamaine Cunniff
Office of the Attorney General
Law Enforcement Defense Division
(By Hand)

/s/ Allan K. Cook
**ALLAN K. COOK**
Assistant Attorney General
